**Kenneth N. HAMMOND, Appellant,**

v.

**Margaret QUICK, Appellee.**

**No. 02–CV–1040.**

District of Columbia Court of Appeals.

Submitted July 22, 2003.

Decided July 31, 2003.

Kenneth N. Hammond, pro se.

Arabella Teal, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel at the time the brief was

filed, and Mary L. Wilson, Assistant Corporation Counsel, were on the brief for appellee.

Before GLICKMAN and WASHINGTON, Associate Judges, and KING, Senior Judge.

WASHINGTON, Associate Judge.

In 1998, the appellant, Kenneth Hammond, pled guilty to misdemeanor assault. Since he was on parole at the time of his plea, a parole violator warrant was issued and executed. The District of Columbia Board of Parole ("Board") subsequently concluded that Mr. Hammond had committed four parole violations. Accordingly, the Board revoked his parole and gave him a set-off date—the time at which he would next be considered for parole—of January 7, 2000. Because this date was longer than that recommended by the Board's guidelines, Mr. Hammond sought *habeas* relief in the Superior Court. The Board conceded that it had erred by failing to provide a written explanation for departing from its guidelines, but also indicated it would remedy the error by holding a new revocation hearing for Mr. Hammond, and the trial judge dismissed his *habeas* petition.

The Board did hold a new hearing and it recommended a new set-off date of April 7, 1999. However, the appellee, Margaret Quick, who was then the Board's Chair, disagreed and recommended a set-off date of January 6, 2001. The Board apparently concurred and issued an appropriate order. Mr. Hammond again sought *habeas* relief but was unsuccessful in his efforts. On appeal, however, we reversed and remanded [1] because a presumption of vindictiveness [2] attached to the Board's action

---

1. *See Hammond v. District of Columbia Bd. of Parole,* 756 A.2d 896, 901 (D.C.2000).

2. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (a presumption of vindictiveness arises—and consti-

which the government had failed to rebut by pointing to objective evidence justifying the January 6, 2001 set-off date.

On remand, the United States Parole Commission[3] ("Commission") held a reconsideration hearing before the second set-off date of January 6, 2001 and *nunc pro tunc* to the original set-off date of January 7, 2000. The Commission concluded that Mr. Hammond was not suitable for release and pursuant to its guidelines gave him a set-off date in August 2002. After his *habeas* petition from that decision was denied, Mr. Hammond again appealed but in an unpublished Memorandum Opinion and Judgment we concluded the Commission's *nunc pro tunc* reconsideration hearing had remedied the presumptive vindictiveness and we affirmed the denial of his *habeas* petition.[4]

In the meantime, Mr. Hammond sued Ms. Quick, individually, under 42 U.S.C. § 1983, claiming that she had violated his constitutional rights by increasing his set-off date. The Superior Court granted her motion to dismiss and this appeal followed. Ms. Quick contends the trial court correctly dismissed Mr. Hammond's case because she is immune from suit under *Cunningham v. District of Columbia,* 584 A.2d 573 (D.C.1990). We agree.

It is well established that judges are immune "from liability for acts done in their judicial capacity if the particular act at issue is a 'judicial act.'" *Id.* at 576.

[T]he factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity.

*Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). The District of Columbia, like many jurisdictions, has recognized that the protection of judicial immunity is not limited to judges but extends to other public officials and employees whose duties relate to the judicial process. *Cunningham,* 584 A.2d at 576. And, of particular importance to this case, we have held that "parole boards are shielded by judicial immunity when they perform their official duties[.]" *Id.* at 577. This is necessary since the tasks that parole board officials perform when deciding whether to grant, deny, or revoke parole are functionally equivalent to those performed by a judge. *Id.* (citing *Sellars v. Procunier,* 641 F.2d 1295, 1303 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981)).

Mr. Hammond acknowledges this doctrine, but argues, broadly, that Ms. Quick's acts are not protected because they were not "judicial" in nature.[5] More specifically, he contends: 1) her acts cannot be judicial because we once applied the presumption of vindictive retaliation to them, and 2) they were not the adjudicatory acts of a parole board official, but were the executive actions of a prosecutor. Neither

---

tutes a violation of due process—when a judge imposes a more severe sentence on a defendant after a new trial).

3. Within a few weeks of our decision in *Hammond, supra* note 1, the Board was abolished and the Commission assumed responsibility for making parole determinations for D.C.Code offenders. *See* D.C.Code § 24–131 (2001).

4. *See Hammond v. United States Parole Comm'n,* No. 01–SP–158, at 3, 794 A.2d 635 (D.C. Feb. 5, 2002).

5. Mr. Hammond also contends this question is a factual matter which should have been submitted to a jury. That is incorrect, the question is one of law which we consider *de novo. See Bono v. Benov,* 197 F.3d 409, 411–12 (9th Cir.1999).

proposition is persuasive. First, the presumed vindictiveness of Ms. Quick's action is largely irrelevant to the question of her immunity. So long as the action was taken, as here, within the confines of her "judicial" duties, she is protected from suit no matter " 'how[ ] erroneous the act may have been, [or] injurious ... its consequences ... may have proved ....' " *Id.* at 576 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871)). To be held personally responsible, Ms. Quick would have had to have " 'acted in the clear absence of all jurisdiction[,]' " *see id.* (quoting *Stump, supra,* 435 U.S. at 357, 98 S.Ct. 1099), otherwise she is protected "even if the act was prompted by malicious or corrupt reasons[.]" *Lopez v. Vanderwater,* 620 F.2d 1229, 1233 (7th Cir.1980). Second, because Ms. Quick's set-off decision was apparently motivated by her conclusion that Mr. Hammond was not credible, he argues her decision was thus an executive, investigative, prosecutorial act outside of her adjudicatory role. In support of this position, Mr. Hammond offers numerous citations where courts have said that parole board officials are not protected when they step outside of their adjudicatory role. He does not, however, offer any support for his claim that a credibility determination is not an adjudicatory function, nor do we believe such a position can be maintained. *See Johnson v. United States,* 616 A.2d 1216, 1234 (D.C.1992) (credibility determinations are within the fact-finder's discretion).

In short, we hold that Ms. Quick's action in recommending a set-off date for Mr. Hammond, which was accepted by the Board, was part and parcel of her official duties in deciding whether to revoke, grant, or deny him parole, and that she is protected from suit under the doctrine of judicial immunity. For this reason, the judgment of the Superior Court is affirmed.

*So ordered.*